UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Edward Charles Ramsdell

     v.

                                    Civil No. 23-cv-495-SE
                                    Opinion No. 2025 DNH 028

Leland Dudek,[1] Acting Commissioner of
the Social Security Administration


O R D E R

     Edward Charles Ramsdell challenges the denial of his application for disability insurance benefits pursuant to 42 U.S.C. § 405(g). An administrative law judge ("ALJ") found that Ramsdell retained the residual functional capacity to perform medium work with certain limitations. Relying on the testimony of an impartial vocational expert, the ALJ found that Ramsdell can perform jobs that exist in significant numbers in the national economy. Accordingly, the ALJ concluded that Ramsdell was not disabled as defined by the regulations, see 20 CFR § 404.1505(a), and the Acting Commissioner therefore denied his application for disability benefits.

     Ramsdell moves to reverse the Acting Commissioner's decision. Doc. no. 6. He argues that the ALJ erred in his residual functional capacity assessment by failing to evaluate properly two medical providers' opinions. The Acting Commissioner moves to affirm, arguing that the ALJ's decision was supported by substantial evidence. Doc. no. 9. For the reasons discussed

---

     [1] In February 2025, Leland Dudek was appointed as the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), she automatically replaces the nominal defendant, the Commissioner of the Social Security Administration.

below, the court denies Ramsdell's motion to reverse and grants the Acting Commissioner's motion to affirm.

Standard of Review

For the purpose of review under § 405(g), the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020). The court defers to the ALJ's factual findings if they are supported by substantial evidence. Biestek v. Berryhill, 587 U.S. 97, 102 (2019). Substantial evidence is "more than a mere scintilla," id. at 103, and exists, even if the record could support a different conclusion, when "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion," Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); accord Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).

In determining whether a claimant is disabled, the ALJ follows a five-step sequential analysis, "such that the answer at each step determines whether progression to the next is warranted." Sacilowski, 959 F.3d at 433; 20 C.F.R. § 404.1520(a)(4). The claimant "has the burden of production and proof at the first four steps of the process." Sacilowski, 959 F.3d at 433. At the first three steps, the claimant must prove that (1) he is not engaged in substantial gainful activity; (2) he has a severe impairment; and (3) the impairment meets or equals a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(i)-(iii).

If the claimant meets his burden at the first two steps of the sequential analysis, but not at the third, the ALJ assesses the claimant's residual functional capacity ("RFC") before proceeding

to Step Four. Id. § 404.1520(e). RFC measures the maximum amount a person can do in a work setting despite the limitations caused by his impairments. Id. § 404.1545(a)(1). At Step Four, the claimant must establish that his RFC is insufficient to perform any of his past relevant work. Id. § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, the ALJ will find that the claimant is not disabled. See id. § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ proceeds to Step Five, in which the Social Security Administration has the burden of showing that jobs exist in the economy which the claimant can do in light of the RFC assessment as well as the claimant's age, education, and work experience. See id. § 404.1520(a)(4)(v). If such jobs exist, the claimant is not disabled. Id. If they do not, he is disabled. Id.

## Background

A detailed factual background can be found in Ramsdell's statement of facts (doc. no. 5), the Acting Commissioner's statement of facts (doc. no. 8), and in the administrative record (doc. no. 3). The court provides a brief summary of the case here.

Ramsdell has reported a history of Chronic Obstructive Pulmonary Disease. From November 2019 through December 2021, Ramsdell presented to the Emergency Departments of various hospitals several times complaining of an exacerbation of his COPD symptoms, including shortness of breath. He was prescribed numerous medications for his symptoms, including Prednisone. He also saw Jameson Lassor, APRN, several times for treatment of his symptoms.

On May 5, 2021, Ramsdell filed an application for disability insurance benefits, alleging that he was disabled because of his COPD, anxiety, stomach ulcers, and high blood pressure. See

Admin. Rec. at 243. He alleged a disability onset date of November 4, 2020, the day after he was laid off from his job.

The Social Security Administration denied Ramsdell's application at the initial level and again after a request for reconsideration. Ramsdell then requested a hearing in front of an ALJ. On October 11, 2022, the ALJ held a telephonic hearing. Ramsdell, who was represented by an attorney, appeared and testified.

On November 28, 2022, the ALJ issued an unfavorable decision. He found that Ramsdell had not engaged in substantial gainful activity from November 4, 2020, through December 31, 2021, the last date he met the insured status requirements of the Social Security Act. At Step Two, the ALJ found that Ramsdell had two severe medically determinable impairments: COPD and anxiety. At Step Three, the ALJ found that Ramsdell's impairments individually or in combination did not meet or equal a listed impairment.

The ALJ then proceeded to assess Ramsdell's RFC. After reviewing the evidence in the record, the ALJ determined that Ramsdell had the RFC to perform medium work with certain limitations. Specifically, he found that he:

> can climb ramps and stairs frequently, climb ladders, ropes, or scaffolds
> frequently, stoop frequently, kneel frequently, crouch frequently, crawl
> frequently. The claimant must avoid concentrated exposure to humidity, wetness,
> dusts, odors, fumes, pulmonary irritants, extreme cold, and extreme heat. The
> claimant is able to perform simple, routine tasks and deal with simple changes in
> a routine work setting.

Admin. Rec. at 22.

In making that finding, the ALJ evaluated the medical opinions that the Social Security Administration considered at the initial level and on reconsideration. The Social Security Administration relied on those medical opinions, from Drs. Sannagai Brown, Mary Ann

Nicastro, Russell Phillips, and William Jamieson, in concluding that Ramsdell could perform a range of medium work with certain postural and environmental limitations. The ALJ found those opinions persuasive, noting that they were consistent with objective medical findings, other examiners' findings, and Ramsdell's hearing testimony. Id. at 24.

The ALJ also considered the opinion of Dr. Stuart Glassman, a consultative examiner. Dr. Glassman opined that Ramsdell could perform a range of medium work with postural and manipulative limitations. The ALJ found Dr. Glassman's opinion persuasive with two exceptions. First, he found that "the opined manipulative limitations are inconsistent with the evidence that has developed subsequently in the record" and he declined to incorporate them into the RFC. Id. at 25. Second, he disagreed with Dr. Glassman's lack of opined environmental limitations, as he found that opinion inconsistent with Ramsdell's hearing testimony.

The ALJ further evaluated Nurse Lassor's opinion that Ramsdell was restricted to a range of less than sedentary work with additional limitations and found his opinion "non-persuasive." Id. at 25. He noted that Nurse Lassor did not point to objective medical findings that would support such a significant restriction on Ramsdell's ability to work, and that his opinion was inconsistent with Ramsdell's statements to Dr. Glassman that he could lift up to fifty pounds. The ALJ also stated that Nurse Lassor's lack of opined mental limitations for Ramsdell was inconsistent with other evidence in the record.

In addition, the ALJ considered Dr. Robert Prescott's opinion. Dr. Prescott, who performed a consultative examination, assessed that Ramsdell "experiences some panic symptoms and anticipatory anxiety, primarily around his physical health." Id. at 713. He diagnosed Ramsdell with Unspecified Anxiety Disorder. Dr. Prescott opined that Ramsdell

"could understand and remember fairly basic work-like instructions, maintain attention on basic work activities for short periods, complete straightforward tasks at a reduced or inconsistent pace, and function in low stress environments, though he was not expected to interact with others without distress at a typical work setting." Id. at 25. The ALJ found the opinion "persuasive to the extent that the examiner's internal findings of abnormal memory, thought process, mood, and affect, despite normal findings of behavior and both logical and coherent speech, provide some support for these limitations." Id. He also found the opinion consistent with Ramsdell's hearing testimony.

However, the ALJ did not adopt Dr. Prescott's opined social limitations for Ramsdell. The ALJ found that those limitations were "based more on the claimant's stress regarding his COPD rather than an inability to get along with others and is inconsistent with his own Adult Function Report in which he states that he is able to interact with friends and family in smaller settings and for special occasions." Id.

In response to hypothetical questions that the ALJ posed, the vocational expert, Whitney Eng, testified that a person with Ramsdell's age, education, past work experience, and RFC (as assessed by the ALJ) could not perform Ramsdell's past work. However, that person could perform the job duties of occupations existing in significant numbers in the national economy. These occupations included "laborer stores," hand packager, and "packager, machine." Based on the ALJ's RFC assessment and Eng's testimony, the ALJ found at Step Four of the sequential process that Ramsdell could not perform any past relevant work, but found at Step Five that he could perform other jobs and was not disabled.

The Appeals Council denied Ramsdell's request for review of the ALJ's decision,

making it the final decision of the Acting Commissioner for the purpose of judicial review. 20

C.F.R. § 422.210(a); see Sims v. Apfel, 530 U.S. 103, 107 (2000). This action followed.

<u>Discussion</u>

Ramsdell argues that the ALJ's conclusion as to his RFC is not supported by substantial

evidence because the ALJ improperly discounted some or all of Nurse Lassor's and Dr.

Prescott's opinions concerning his limitations. The Acting Commissioner disputes Ramsdell's

arguments and contends that the ALJ's decision is supported by substantial evidence.

When determining a claimant's RFC, an ALJ "must always consider and address medical

source opinions. If the RFC assessment conflicts with an opinion from a medical source, the

adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7

(S.S.A. July 2, 1996). In order to determine what weight to assign a medical source opinion, the

ALJ must consider the following factors: supportability, consistency, relationship, specialization,

and other factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5). "The most important factors to be

considered when the Commissioner evaluates persuasiveness are supportability and consistency;

these are usually the only factors the ALJ is required to articulate." Nicole C. v. Saul, No. CV

19-127JJM, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(b)(2)).

I.    Nurse Lassor's Opinion

Ramsdell contends that the reasons that the ALJ offered to discount Nurse Lassor's

opinion were insufficient and wrong. For example, Ramsdell disputes the ALJ's statement that

Nurse Lassor did not provide objective medical findings that would support that Ramsdell was

limited to less than sedentary work. He also takes issue with the ALJ's reliance on Ramsdell's
statement to Dr. Glassman that he could lift fifty pounds, which the ALJ found was inconsistent
with the limitations in Nurse Lassor's opinion.

About the ALJ's statement that Nurse Lassor did not provide objective medical findings
to support his opinion, Ramsdell provides a summary of his medical records, including his
appointments with Nurse Lassor and his emergency room visits, as well as the results of
Ramsdell's stress test. Ramsdell asserts that this is objective medical evidence that supports
Nurse Lassor's opinion and that the ALJ improperly ignored it.

Ramsdell, however, does not explain how the cited records support an RFC of less than
sedentary work. Nurse Lassor provided his opinion in a Physical Impairment Questionnaire.
Admin. Rec. at 815-18. He did not cite any medical records or test results in that document. See
id. Although Ramsdell quotes extensively from his records, which include frequent references to
him "wheezing," he has not shown or explained how these records support the conclusion that he
is limited to less than sedentary work. See West v. Colvin, No. 1:16-CV-00157-JAW, 2016 WL
7048694, at *7 (D. Me. Dec. 5, 2016) ("In any event, the plaintiff does not explain how, in his
view, Possee's objective findings supported a limitation to sedentary work."), report and
recommendation adopted, No. 1:16-CV-00157-JAW, 2016 WL 7480267 (D. Me. Dec. 29, 2016),
aff'd sub nom. West v. Berryhill, No. 17-1170, 2017 WL 6499834 (1st Cir. Dec. 11, 2017).

Regardless, the ALJ's decision shows that he did consider this evidence and concluded
that it did not support Nurse Lassor's opinion. The ALJ discussed how Ramsdell's examinations
showed a "mixed record," citing to his various examinations and emergency room visits and how
they often resulted in normal or contradictory findings. Admin. Rec. at 23. Further, the ALJ
addressed the results of Ramsdell's stress test, noting Nurse Lassor's comments that the results

were "inconclusive." Id. at 23, 632. The ALJ also relied on and found persuasive the opinions of

Drs. Brown and Nicastro, both of whom considered these same medical records, including the

stress test, and concluded that Ramsdell could perform a range of medium work. Id. at 24, 84-86,

96-97. Thus, the ALJ permissibly determined that Nurse Lassor's opinion was not supported by

and was inconsistent with the objective medical evidence in the record. See Irlanda Ortiz, 955

F.2d at 769 (it is the ALJ's job to resolve conflicts in the evidence, not the court's).

Ramsdell's complaints concerning the ALJ's consideration of his statements to Dr.

Glassman fare no better. The ALJ noted that Nurse Lassor's "limitation to sedentary work is

inconsistent even with the claimant's own reports to the consultative examiner[, Dr. Glassman],

in which he stated that he could lift up to fifty pounds." Admin. Rec. at 25-26. Ramsdell points

to other statements that that he made to Dr. Glassman that are consistent with Nurse Lassor's

opinion, and he generally criticizes Dr. Glassman for not performing a pulmonary examination.

Ramsdell has not shown that the ALJ erred in his evaluation of Dr. Glassman's opinion.

He concedes that his statement to Dr. Glassman regarding his lifting ability is inconsistent with

the limitations included in Nurse Lassor's opinion. Doc. no. 6-1 at 7. The ALJ was entitled to

consider this inconsistency, regardless of Ramsdell's other statements. Further, although

Ramsdell surmises that "perhaps [Dr. Glassman's] exertional limitations would have been

greater" if he had performed a pulmonary examination rather than just a musculoskeletal one,

doc. no. 10 at 3-4, his speculation does not undermine the ALJ's decision.

At bottom, Ramsdell's arguments regarding Nurse Lassor's opinion effectively "ask[] the

court to reweigh the evidence before the ALJ and come to a different conclusion." Gorham v.

Saul, No. 18-CV-853-SM, 2019 WL 3562689, at *7 (D.N.H. Aug. 6, 2019). That is not the

court's role. See e.g., Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001). The ALJ supportably

explained why he did not adopt Nurse Lassor's opinion, and Ramsdell has not shown any error in that evaluation.

II.    Dr. Prescott's Opinion

Ramsdell faults the ALJ for not explaining why he failed to incorporate certain portions of Dr. Prescott's opinion into his RFC. Specifically, he points to Dr. Prescott's opinion that Ramsdell can only do straightforward tasks at an inconsistent or reduced pace and can only focus attention on basic work activities. The ALJ did not adopt any limitations for concentration, persistence, or pace, even though he determined at Step Three that "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant had a moderate limitation." Admin. Rec. at 21. Ramsdell argues that these errors led the ALJ to formulate an RFC that was not supported by substantial evidence. The court does not agree.

The ALJ determined that Ramsdell "is able to perform simple, routine tasks and deal with simple changes in a routine work setting." Admin. Rec. at 22. Although Ramsdell argues that this finding is inconsistent with the ALJ's statement that Ramsdell had a moderate limitation in concentrating, persisting, or maintaining pace, that is not the case. "[T]he First Circuit has recognized that moderate mental limitations impose no significant restriction on the range of work a claimant can perform." Lord v. Berryhill, No. 18-CV-475-LM, 2019 WL 4018308, at *9 (D.N.H. July 23, 2019) (quotations omitted), report and recommendation approved sub nom. Lord v. US Soc. Sec. Admin., Comm'r, No. 18-CV-475-LM, 2019 WL 4015552 (D.N.H. Aug. 23, 2019). Indeed, "[w]hen an acceptable medical source provides an opinion that despite moderate limitations in concentration, persistence, or pace the claimant is able to do . . . simple

10

routine work, no further restriction in residual functional capacity is necessary." Mudgett v. Colvin, No. 14-CV-143-JD, 2014 WL 6977863, at *3 (D.N.H. Dec. 9, 2014).

Here, the ALJ relied on and found persuasive the opinions of Drs. Phillips and Jamieson, both of whom stated that Ramsdell "can maintain attention for two hours at a time and persist at simple tasks over eight- and forty-hour periods with normal supervision." Admin. Rec. at 86, 98. Both doctors also opined that Dr. Prescott's restrictions were "more limiting than . . . treatment records support." Id. at 87, 99. The ALJ is entitled to resolve conflicts in evidence and rely on Drs. Phillips's and Jamieson's opinions that Ramsdell's moderate limitations in concentration, persistence, and pace do not affect his ability to do simple tasks. And, although Ramsdell criticizes the ALJ for not specifically addressing Dr. Prescott's opinion as to those limitations, "the ALJ was not obligated to explain in detail how he evaluated every aspect of every opinion— that would be infeasible." Kyah M. v. Colvin, No. 2:24-CV-00064-NT, 2025 WL 289185, at *3 (D. Me. Jan. 24, 2025) report and recommendation adopted sub nom. Kyah M. v. King, Acting Comm'r of Soc. Sec., No. 2:24-CV-00064-NT, 2025 WL 460781 (D. Me. Feb. 11, 2025); 20 C.F.R. § 404.1520c(b)(1) ("[I]t is not administratively feasible . . . to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in [the] case record.").

The ALJ adequately accounted for Ramsdell's mental limitations in the RFC assessment and relied on medical opinion evidence to support his conclusion. Ramsdell has not shown error, and the ALJ's decision is supported by substantial evidence.

Conclusion

For the foregoing reasons, the Acting Commissioner's motion to affirm (document no. 9)

is granted. Ramsdell's motion to reverse (document no. 6) is denied. The clerk of court shall

enter judgment accordingly and close the case.

SO ORDERED.

Samantha D. Elliott
United States District Judge


March 3, 2025

cc:  Counsel of Record